DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHRISTINA MARIE POWERS,**
Appellant,

v.

**ROY GEORGE WHITCRAFT, III,**
Appellee.

No. 4D21-194

[July 21, 2021]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Jane D. Fishman and Phoebee R. Francois, Judges; L.T. Case Nos. COWE18-6373 and CACE19-3936.

Hegel Laurent of Laurent Law Office, P.L., Plantation, for appellant.

No appearance filed for appellee.

GERBER, J.

The alleged tenant appeals from the county court's final judgment in the alleged landlord's favor after a non-jury trial on the alleged tenant's damages actions against the alleged landlord for violating section 83.67(1), Florida Statutes (2018). Section 83.67(1) permits tenants to recover damages against landlords for certain prohibited practices including, as the alleged tenant claimed here, termination or interruption of utilities. In the final judgment, the county court ruled in the alleged landlord's favor because, in the county court's view, the alleged tenant failed to show by the greater weight of the evidence that a landlord-tenant relationship existed, thus precluding chapter 83's application to the action.

We agree with the alleged tenant's argument that the final judgment's findings of fact indicate the alleged tenant proved a landlord-tenant relationship existed as a matter of law. Therefore, we reverse the county court's final judgment, and remand for the county court to determine whether the tenant proved the alleged landlord violated section 83.67 and, if so, to determine the alleged tenant's proven damages amounts.

## ***The Alleged Tenant's Verified Complaint***

The alleged tenant filed a verified complaint pertinently alleging as follows. She placed an ad on Craigslist indicating she sought to rent a room in which she and her teenage daughter could live. The alleged landlord responded and orally agreed to let her and her teenage daughter reside with him in a house which he was renting from someone else. In exchange, the alleged tenant was to pay the alleged landlord $600 per month plus one-half of the utilities, beginning on Friday, June 1, 2018.

On June 4, after the alleged tenant and her daughter had moved into the house, the alleged tenant accused the alleged landlord of acting inappropriately towards her daughter, resulting in the police being called to the house. The alleged landlord requested the police to remove the alleged tenant and her daughter from the property. The police refused to do so. The alleged landlord then chose to move out of the house instead.

On June 12, the alleged tenant woke to discover the house's electricity and water were not working, and that the alleged landlord had placed locks on the electricity and water boxes. The alleged tenant called the police, and a neighbor, under police supervision, cut the locks so the allege tenant could turn on the electricity and water.

On June 14, the alleged tenant came home to discover the house's electricity was not working. The alleged landlord also apparently had entered the house and left the refrigerator door open, thus causing the alleged tenant's refrigerated items to become unusable.

On June 15, the alleged tenant discovered the house's water was not working.

Based on the foregoing, the alleged tenant's verified complaint pled five damages actions against the alleged landlord for violating section 83.67(1), Florida Statutes (2018) (a residential landlord "shall not cause, directly or indirectly, the termination or interruption of any utility service furnished the tenant, including, but not limited to, water … electricity … or refrigeration, whether or not the utility service is under the control of, or payment is made by, the landlord"). The five damages actions respectively pertained to the alleged landlord's: (1) June 12 termination or interruption of the alleged tenant's electricity service; (2) June 12 termination or interruption of the alleged tenant's water service; (3) June 14 termination or interruption of the alleged tenant's electricity service; (4) June 14 termination or interruption of the alleged tenant's refrigeration; and (5) June 15 termination or interruption of the alleged tenant's water service.

For each of the five damages actions, the alleged tenant requested the county court to award "damages in the amount of three months' rent ($600 x 3 = $1,800.00)" pursuant to section 83.67(6), Florida Statutes (2018) ("A landlord who violates any provision of this section shall be liable to the tenant for actual and consequential damages or 3 months' rent, whichever is greater, and costs, including attorney's fees.").

The alleged landlord filed an answer denying the verified complaint's material allegations. The alleged landlord did not plead any affirmative defenses.

### *The County Court's Final Judgment*

After a non-jury trial on the alleged tenant's damages actions, the county court entered a final judgment in the alleged landlord's favor. The county court's final judgment included the following findings of fact and conclusions of law:

1. [The alleged tenant] placed an ad on Craig's List, looking for a room for her and her daughter to share. [The alleged landlord], who was renting a home, responded to the ad and said that she could move in to one of the bedrooms in the home as his roommate, for $600 per month, plus one-half of the utilities. The credible evidence at trial also established that [the alleged landlord] required [the alleged tenant] to pay first and last month rent and a $600 security deposit, for a total of $1800, at the time of move in. [The alleged tenant] advised [the alleged landlord] that she would not have the money until June 4, and [the alleged landlord] agreed to let her move in on June 1 and pay her portion on June 4. On June 4, [the alleged tenant] tendered $600 to [the alleged landlord]. [The alleged landlord] refused the $600 and told [the alleged tenant] that since she could not come up with the $1800 required, she would have to move out by the end of the week.

2. [The alleged tenant] did not leave the shared residence. Instead, the parties engaged in an extensive and acrimonious text messaging debate in which both parties hurled accusations at each other. At some point, the police were called, and [the alleged tenant] accused [the alleged landlord] of acting inappropriately towards her teenage daughter. [The alleged landlord] was not arrested or charged with any

3

wrongdoing, but, because of [the alleged tenant's] accusations, [the alleged landlord] vacated the premises ... to avoid any further accusations. Because the utilities at the shared residence were in [the alleged landlord's] name, when he moved he terminated those utilities in order to open utility accounts for his new residence.

3. There was a great deal of testimony at trial regarding [the alleged tenant's] claims that [the alleged landlord] was in fact a landlord, and not a roommate, and was therefore subject to all the requirements of Chapter 83, Florida Statutes. However, the credible evidence at trial wholly failed to establish that these parties had any meeting of the minds or ever agreed to a landlord-tenant relationship. The attempt by [the alleged landlord] to evict [the alleged tenant] on behalf of his landlord by giving [the alleged tenant] a 3-day notice for non-payment in which he identified himself as the landlord notwithstanding, no landlord-tenant relationship was created which would bind these parties.

4. [The alleged tenant] has failed to meet her burden of proof by a preponderance of the credible evidence that the [alleged landlord] caused her money damages in any amount, or that [the alleged landlord] was her landlord, or that chapter 83 of the Florida Statutes applies to the parties['] situation. Thus, [the alleged tenant] has failed to prove that she is entitled to statutory damages for interruption of utility services.

Therefore, it is

ORDERED and ADJUDGED that [the alleged tenant] recover NOTHING from [the alleged landlord], and that [the alleged landlord] shall go hence without day.

### *The Alleged Tenant's Motion for Rehearing and Argument on Appeal*

The alleged tenant filed a motion for rehearing or new trial. In the motion, the alleged tenant pertinently argued:

The facts found by the [county] [c]ourt have all of the hallmarks of a [l]andlord-tenant relationship .... A person in Florida who has control over a property such that he is

4

entitled to … make rental agreements, allow entry onto the premises, attempt to remove the tenant for failing to abide by the terms … and even name himself a [l]andlord in a three-day notice [and yet] not [be] a [l]andlord … brings to question the appropriate application of the Florida statutes that strongly indicate a different determination.  ….

….

The [county] court also states that there was no meeting of the minds but all of the critical parts necessary for an oral lease were clearly determined:  a place, a purpose for the place, an amount of money at a determined interval of time. In any case, in Florida the requirements for dictating when a [l]andlord-[t]enant relationship exist are defined by statute ….

A successor county court judge issued an order summarily denying the alleged tenant's motion for rehearing or new trial.

The alleged tenant timely filed a notice of appeal.  The alleged tenant argues that based on the final judgment's factual findings, the county court reversibly erred in concluding as a matter of law that she had failed to show a landlord-tenant relationship existed, thus precluding chapter 83's application to her damages actions.

The alleged landlord has not filed an answer brief.

### *Our Review*

We agree with the alleged tenant's argument.  Before addressing our reasoning, we preliminarily note that the county court's findings of fact indicate the alleged landlord was renting the house as a lessee, with the utilities registered in his name, when he entered into the oral agreement with the alleged tenant.  *See* Final Judgment at ¶ 3 ("The attempt by [the alleged landlord] to evict [the alleged tenant] *on behalf of his landlord* by giving [the alleged tenant] a 3-day notice for non-payment in which he identified himself as the landlord notwithstanding, no landlord-tenant relationship was created which would bind these parties.") (emphasis added).  As a result, the question here is whether the alleged landlord was a sublessor bound by the requirements of Chapter 83, Part II, Florida Statutes (2018), also known as the Florida Residential Landlord and Tenant Act ("Residential Act").

The Residential Act's plain language answers that question as yes. Section 83.43(3) defines "landlord" as "the owner *or lessor* of a dwelling unit." § 83.43(3), Fla. Stat. (2018) (emphasis added). Section 83.43(2)(a) defines a "dwelling unit" as "[a] structure *or part of a structure* that is rented for use as a home, residence, or sleeping place by one person or by two or more persons who maintain a common household." § 83.43(2)(a), Fla. Stat. (2018) (emphasis added). Thus, a person like the alleged landlord here, who already leases a dwelling unit, and then re-leases that dwelling unit or a portion thereof to a third party like the alleged tenant here, while still living in the dwelling unit himself, is, in fact, a "landlord."

Further, the oral agreement here between the alleged landlord and the alleged tenant was a "rental agreement." *See* § 83.43(7), Fla. Stat. (2018) ("'Rental agreement' means any written agreement, including amendments or addenda, *or oral agreement* for a duration of less than 1 year, *providing for use and occupancy of premises*.") (emphasis added). Although the record does not indicate the rental agreement's duration, the county court found the alleged landlord required the alleged tenant to pay first and last month rent and a $600 security deposit, thus indicating a month-to-month tenancy. *See* § 83.46(2), Fla. Stat. (2018) ("If the rental agreement contains no provision as to duration of the tenancy, the duration is determined by the periods for which the rent is payable. If the rent is payable … monthly, tenancy is from month to month. …").

Thus, the alleged tenant here, as a person who was entitled to occupy the house under the rental agreement with the alleged landlord, was, in fact, a "tenant." *See* § 83.43(4), Fla. Stat. (2018) ("'Tenant' means any person entitled to occupy a dwelling unit under a rental agreement."). The fact that the rental agreement required the alleged tenant to pay one-half of the utilities, in addition to the $600 monthly payment, does not alter that conclusion. *See* § 83.43(6), Fla. Stat. (2018) ("'Rent' means the periodic payments due the landlord from the tenant for occupancy under a rental agreement *and any other payments due the landlord from the tenant* ….") (emphasis added).

Based on the foregoing, the county court reversibly erred when it concluded as a matter of law that the evidence did not establish the parties agreed to a landlord-tenant relationship and that the Residential Act did not apply to the parties' situation. The only possible conclusion of law when applying the county court's findings of fact to the Residential Act's plain language is that the parties agreed to a landlord-tenant relationship, and thus the Residential Act applied to the parties' situation.

Because the county court reversibly erred in this manner, we cannot discern whether the county court properly reached the issue of whether the alleged landlord violated section 83.67(1) (a residential landlord "shall not cause, directly or indirectly, the termination or interruption of any utility service furnished the tenant, including, but not limited to, water … electricity … or refrigeration, whether or not the utility service is under the control of, or payment is made by, the landlord").

The only finding of fact which the county court made in its final judgment regarding the utilities was the following sentence: "Because the utilities at the shared residence were in [the alleged landlord's] name, when he moved he terminated those utilities in order to open utility accounts for his new residence." *See* Final Judgment at ¶ 2. We cannot discern from the final judgment's context whether the county court intended that sentence to simply be a factual finding, or to be its legal conclusion that even if a landlord-tenant relationship existed, the alleged landlord did not intend his termination or interruption of the utilities to effect a self-help eviction and, therefore, did not violate section 83.67(1). *Cf. Badaraco v. Suncoast Towers V Assocs.*, 676 So. 2d 502, 504 (Fla. 3d DCA 1996) (affirming the trial court's dismissal of the tenant's section 83.67 complaint where "the [utility] interruptions were not intended to effect self-help eviction").

Thus, we reverse the county court's final judgment, but remand for the county court to: (1) treat our conclusions that the parties agreed to a landlord-tenant relationship, and that the Residential Act applied to the parties' situation, as law of the case; (2) determine as a matter of law whether the alleged landlord's termination or interruption of the utilities violated section 83.67(1), as interpreted in *Badaraco*; and (3) if so, determine the alleged tenant's damages amounts. If the county court is unable to make the second and third determinations based on the record, the county court shall conduct an evidentiary hearing to do so.

*Reversed and remanded with instructions.*

CONNER, C.J., and CIKLIN, J., concur.

*       *       *

**Not final until disposition of timely filed motion for rehearing.**